### No. 27913

**Atlantic Richfield Company v. The State of Colorado and Joseph F. Dolan, Executive Director of the Department of Revenue of the State of Colorado**

(601 P.2d 628)

Decided October 10, 1979.

Holland and Hart, William E. Murane, Alan E. Boles, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Chris J. Eliopulos, Special Assistant Attorney General, for defendants-appellees.

William D. Dexter, for Amicus Curiae Multistate Tax Commission.

*En Banc.*

JUSTICE CARRIGAN delivered the opinion of the Court.

Atlantic Richfield Company (Richfield) appeals from a district court judgment which affirmed a determination by the Executive Director of the Department of Revenue (Director) that Richfield owed $38,533.00 in Colorado income tax for 1969-1973. We affirm the district court.

Richfield is a large, integrated oil company engaged in exploring for, producing, refining and marketing crude oil, other petroleum products and petrochemicals. It is a Pennsylvania corporation but maintains its principal place of business and commercial domicile in California. In Colorado, where Richfield is duly qualified to conduct business, its activities consist principally of exploring for and producing oil and natural gas.

Richfield and Sinclair Oil Company (Sinclair) agreed to merge in November 1968. Prior to merger, Sinclair had been an integrated oil company with large crude oil reserves located primarily in Texas. Sinclair had operated four refineries in the United States and had marketed gasoline in all but the far western states. Richfield's business purpose for the merger

was to provide it nationwide diversified operations and greater financial resources.

In December 1968, to forestall an anticipated anti-trust challenge to the merger, Richfield agreed to sell all of Sinclair's properties in the northeastern United States to the British Petroleum Company, an unrelated and unaffiliated corporation. Notwithstanding this precautionary effort by Richfield, the United States Department of Justice filed a federal court action to prevent the merger. This action alleged that the merger would substantially reduce competition and tend to create a monopoly in certain gasoline markets. The federal court granted a temporary restraining order and later a preliminary injunction forbidding the merger. *United States v. Atlantic Richfield,* 297 F. Supp. 1060 (S.D.N.Y. 1969); *United States v. Atlantic Richfield,* 297 F. Supp. 1061 (S.D.N.Y. 1969).

Richfield thereupon amended its original agreement with British Petroleum to include, along with the sale of Sinclair's marketing properties in the northeastern region of the United States, those in the southeastern region as well. Certain assets of Richfield were also sold to British Petroleum as part of this transaction. As a result of this agreement, the federal court vacated its preliminary injunction. *United States v. Atlantic Richfield,* 297 F. Supp. 1075 (S.D.N.Y. 1969).

On March 4, 1969, the Sinclair merger was consummated for an aggregate consideration of $2.2 billion. That same day, the sale to British Petroleum was closed. Under the terms of the sale agreement, British Petroleum agreed to pay Richfield $350,700,000 in interest-bearing installments. Of this total sale price, $130,700,000 represented good will. None of the assets sold to British Petroleum were located in Colorado.

On August 28, 1970, the federal court entered a final consent judgment. *United States v. Atlantic Richfield,* 1970 CCH Trade Cases p. 73,280 (S.D.N.Y. 1970). The judgment ordered Richfield to divest itself, within three years after entry of the judgment, of substantially all the assets formerly owned by Sinclair in the Rocky Mountain and central regions. Accordingly, on December 29, 1972, with Justice Department approval, Richfield sold these assets to Pasco, Inc., an unrelated corporation, for approximately $148,000,000. The sale to Pasco resulted in an overall capital gain to Richfield in 1972. However, if only those former Sinclair assets located in Colorado are considered, Richfield suffered a net loss of $293,798.

Slightly over twenty per cent of the former Sinclair assets were sold by Richfield. During the time Richfield held the Sinclair properties it eventually sold to Pasco, it carried them on its records as current assets producing income, pursuant to its general business accounting methods. Moreover, Richfield treated as business expenses the expenses incurred in selling the Sinclair properties to British Petroleum and Pasco.

In preparing its Colorado income tax returns for 1969 through 1973, Richfield excluded from the computation of its taxable income both: (1) the capital gains from its sales of the prior Sinclair assets to British Petroleum and Pasco, and (2) the interest earned on the notes given by British Petroleum as consideration for the purchase of the Sinclair assets.

In 1975, the Colorado Department of Revenue recomputed Richfield's net Colorado taxable income for the years in question to include both the capital gains and the interest. On the basis of this recomputation the Department proposed a deficiency of $38,533 plus interest. Richfield protested this deficiency and, after an adverse determination by the Director, brought this suit. The district court upheld the Department of Revenue. This appeal is from that judgment.

### I. *Characterization of Capital Gains and Interest.*

The principal question presented is whether, under the Multistate Tax Compact,[1] the interest and capital gains from the sales of assets to British Petroleum and Pasco are "business" income, to be apportioned to and taxed by Colorado, or "non-business" income, allocable to and taxable by only states having the closest connection with the assets sold. Richfield contends that treating these items as "business" income, and apportioning them accordingly for tax purposes, would violate the commerce clause[2] and the Fourteenth Amendment of the United States Constitution.

For the subject years, Richfield had elected to be taxed pursuant to the Multistate Tax Compact, Section 24-60-1301, C.R.S. 1973, which determines the Colorado taxable income of a corporation doing business both within and outside Colorado. The compact provides for taxation of a taxpayer's income by "apportioning" its business income and "allocating" its non-business income. Section 24-60-1301, Art. IV. Apportionment of business income is accomplished by aggregating all items of business income and apportioning that income among the compact taxing states according to a three-part formula based on property, payroll, and sales factors. Section 24-60-1301, Art. IV (9-17). The income thus apportioned to each state is subject to taxation by that state.

In contrast, allocation of non-business income earmarks each item of such income to be attributed to and taxed only by the state with which the asset that generated that income is most closely associated, according to standards set out in Section 24-60-1301, Art. IV.

The threshold step in this taxation process is to identify and segregate the taxpayer's "business" and "non-business" income. The compact defines "business" income as income

---

[1] Section 24-60-1301, C.R.S. 1973.
[2] *U.S. Const.*, Art. I, §8.

"arising from transactions and activities in the regular course of the tax-payer's trade or business, and includes income from tangible and intangible property if the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operation." Section 24-60-1301, Art. IV(1)(a).

"Non-business" income is defined as all income other than business income. Section 24-60-1301, Art. IV(1)(e).

The parties disagree as to the proper construction of the statutory definition of "business" income and the appropriate application of the term to Richfield's income. Richfield maintains that the statute establishes a transactional test to determine whether certain income constitutes business income. That test turns on whether the income was derived from a transaction or activity in the regular course of trade or business. The crucial inquiries are the frequency and regularity of the activity. *See McVean & Barlow v. New Mexico Dept. of Rev.,* 88 N.M. 521, 543 P.2d 489 (1975); *Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968). Richfield asserts that since it was not in the business of buying and selling large blocks of assets pursuant to court order, the capital gains and interest in issue must be classified as "non-business" income.

The Director agrees that the first clause of the statutory definition establishes the transactional test described by Richfield. However, the Director contends that the second clause of the statutory definition sets out a functional test, under which all gain from the disposition of the property is considered business income if the property disposed of was used by the taxpayer in its regular trade or business operations. Under this test, the extraordinary nature or the infrequency of the transactions is irrelevant. *See Sperry & Hutchinson Co. v. Dept. of Rev.,* 527 P.2d 729 (Or. 1974); *Appeal of Borden, Inc.,* Cal.S.Bd. of Equal. (Feb. 3, 1977).[3] In any event, the Director contends that application of either test mandates classification of Richfield's disputed capital gains and interest as "business" income.

■ We affirm the district court's conclusion that holds that the income in issue is "business" income subject to apportionment and taxation in Colorado because it resulted from a transaction in the regular course of Richfield's business. In light of our action affirming this conclusion of the district court, we need not decide whether the second clause of the statute establishes a functional test to be applied to this income.

Historically, Richfield, as part of its business operations, has regularly engaged in major acquisitions and dispositions of the same type

---

[3] The Colorado Department of Revenue adopted regulations, effective September 1, 1976 (after the tax years here involved), which support the state's interpretation. Reg. IV(1)(a) of the Multistate Tax Compact.

involved here. From 1956 to 1977, it was involved in fifteen purchases or mergers and eleven sales of companies or blocks of assets aside from the sales at issue here. Such acquisitions and dispositions of assets constitute a systematic and recurrent business practice.

Moreover, the sales of assets here at issue were anticipated results of the merger with Sinclair. Richfield's purpose was to acquire Sinclair's assets with the knowledge and understanding that some portion would have to be sold to avoid conflict with the antitrust laws. Regardless of court orders, consideration of the antitrust implications inherent in merging two oil companies of this magnitude is imperative. The disposition of assets to meet the requirements of the antitrust laws was neither unusual nor unforeseeable.

## II.   *Constitutionality.*

■ The United States Constitution allows a corporation's "entire net income . . . generated by interstate as well as intrastate activities, [to] be fairly apportioned among the states for tax purposes by formulas utilizing in-state aspects of interstate affairs." *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 460, 79 S.Ct. 357, 363, 3 L.Ed.2d 421, 428 (1959). Colorado has determined its fair taxable share of Richfield's business income under a formula "utilizing in-state aspects" of the corporation's property, payroll and sales. Section 24-60-1301, Art. IV, C.R.S. 1973.

■ To succeed in challenging the constitutionality of such an apportionment scheme, Richfield must show "by clear and cogent evidence that it results in extraterritorial values being taxed." *Butler Bros. v. McColgan,* 315 U.S. 501, 507, 62 S.Ct. 701, 704, 86 L.Ed. 991, 996 (1942). Richfield has made no showing to that effect.

■ Rather, the apportionment formula is reasonably related to Richfield's business activities in Colorado and, therefore, is constitutional. *See General Motors Corp. v. District of Columbia,* 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68, 73 (1965); *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 121, 41 S.Ct. 45, 47, 65 L.Ed. 165, 169-70 (1920).

The judgment is affirmed.

JUSTICE GROVES, JUSTICE LEE and JUSTICE ROVIRA do not participate.