**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**IOWA DEPARTMENT OF REVENUE
AND FINANCE, Appellee.**

No. 92–1824.

Supreme Court of Iowa.

Dec. 22, 1993.

As Corrected Dec. 28, 1993.

As Amended on Denial of Rehearing
Feb. 17, 1994.

Glenn L. Smith of Finley, Alt, Smith, Scharnberg & May, P.C., Des Moines, Walter Hellerstein and Paul Frankel of Morrison & Foerster, New York City, and Larry Montanye of Phillips Petroleum Co., Bartlesville, OK, for appellant.

Bonnie J. Campbell, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Threatened with a hostile takeover, the management of a petroleum corporation responded by purchasing a substantial amount of its outstanding common stock. In order to retire the debt incurred for this purchase, the corporation sold gas and oil-producing assets, none of which were located in Iowa. The question in this case is whether the sale of those assets can be taxed by Iowa as business income of the corporation. The trial court determined it can be, thereby enabling Iowa to include the income taxes derived from the sales in its apportionment formula. We reverse.

The case was submitted on stipulated facts. Phillips Petroleum Corporation (Phillips) is a Delaware corporation domiciled in Oklahoma. It is engaged in various aspects

of the oil and gas business including production, refining, and marketing. Phillips' only activities in Iowa consisted of marketing.

In December of 1984, Mesa Partners acquired 5.8 percent of Phillips common stock and announced plans to commence a tender offer to purchase up to an additional fifteen percent of the shares. Later, in February of 1985, Ichan Capital Corp. offered to purchase all the outstanding stock from Phillips with cash and subordinated debt. The stated purpose of these activities was to take control of Phillips.

In an effort to stave off these hostile takeover attempts, Phillips offered to exchange debt securities with an aggregate face value of $4.5 billion for roughly forty percent of its outstanding stock. As part of this repurchase plan, Phillips intended to raise $2 billion from the future sale of assets which would be used to retire a portion of the debt acquired in the exchange. The exchange occurred in March of 1985, decreasing the number of outstanding shares by fifty percent and reducing the probability of a hostile takeover.

As contemplated in the exchange offer, Phillips undertook a "special asset disposition program" for the sole purpose of raising cash to pay off the newly acquired debt. Under this plan Phillips and its subsidiaries sold approximately $2 billion in assets. The disposed assets consisted primarily of oil and gas reserves and related assets that had been purchased with capital derived from Phillips' business operations. They were intended to and did produce business income while owned by Phillips. Although Phillips occasionally sells this type of asset, no previous sale approached the magnitude of the disposition here.[1]

Initially Phillips paid Iowa taxes in accordance with the apportionment formula. Then, in November of 1988, Phillips filed amended tax returns with the Iowa department of revenue and finance (department) seeking a refund of taxes paid during the period when the disposition occurred. In May of 1989 the department denied a portion of the refund on the ground that Phillips' gain from the disposition gave rise to apportionable business income, rather than nonbusiness income, and was therefore taxable. Phillips proceeded to exhaust administrative remedies and sought judicial review in district court. The matter is before us on Phillips' appeal from a district court decision affirming the agency action.

■ Upon judicial review of final agency action we, like the district court, function in appellate capacity to correct errors of law. Iowa Code § 17A.19(8); *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 495 (Iowa 1984). Because the case was submitted on stipulated facts our review is on error.

■ I. The parties present the dispute as one of pure statutory construction. It involves Iowa Code section 422.32(2) (1993), which provides:

> "Business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

The statute must be understood in the light of its purpose. The commerce clause of the federal Constitution allows states to tax income of foreign corporations doing business within its borders. Cases interpreting the commerce clause allow taxation of income derived from the corporation's activities beyond the state's borders only in accordance with the "unitary-business principle." Under that principle the state may tax a portion of income derived elsewhere only if the activities were related to the corporate business activities within the state. *Allied–Signal, Inc. v. Director, Div. of Taxation*, 504 U.S.

---

1. As a result of these sales, Phillips' developed oil and gas acreage declined by sixteen percent between 1984 and 1986, with undeveloped acreage declining by thirty-nine percent. For the three years prior to the disposition program, Phillips sold no oil reserves and only small quantities of natural gas reserves. The downsizing also resulted in a twenty-five percent reduction in company employees.

——, ——, 112 S.Ct. 2251, ——, 119 L.Ed.2d 533, 547 (1992); *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 439–40, 100 S.Ct. 1223, 1232–33, 63 L.Ed.2d 510, 522 (1980). So long as states comply with these metes and bounds they are free to adopt their own scheme for taxing income of foreign corporations doing business locally.

Because of the problems inherent in accommodating various schemes, a number of states have adopted the uniform division of income for tax purposes act (UDITPA). *See Asarco, Inc. v. Idaho State Tax Comm'n,* 458 U.S. 307, 310, 102 S.Ct. 3103, 3105, 73 L.Ed.2d 787, 791 (1982). Iowa adopted it verbatim in 1979 as present Iowa Code section 422.32(2). *See* 1978 Iowa Acts ch. 1141, § 1.

■ The present dispute comes down to whether, as the department contends, the statute provides for two tests, one transactional and one functional. Phillips contends the statute provides but one (transactional) test.

According to the department, the statute focuses separately on a first test described in the first sixteen quoted words (transactional test) and those described in the last twenty-five quoted words (functional test). The two are separated by the words "and includes." Accordingly the department reads the statute to set up the following two tests, either of which would satisfy the definition of business income:

1. *Transactional test:* Income is classified as business income if it arises from the transactions and activities in the regular course of the taxpayer's trade or business.

2. *Functional test:* Income is classified as business income if it arises from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

Phillips on the other hand argues that the functional test merely acts to limit the scope of the transactional test. Under Phillips' interpretation income must satisfy both tests before it can be called business income. Not surprisingly the department argues in the alternative that the income at issue here satisfies both tests, and Phillips asserts that it satisfies neither.

Cases from other jurisdictions, while occasionally according lip service to a second (functional) test, quite uniformly reject it as a vehicle for allowing taxation under circumstances similar to those here. *Pledger v. Getty Oil Exploration Co.,* 831 S.W.2d 121, 125 (Ark.1992) (recognizing functional test but disallowing tax); *Western Nat'l Gas Co. v. McDonald,* 202 Kan. 98, 100–01, 446 P.2d 781, 783 (1968) (applying transactional test only in rejecting tax upon complete liquidation); *Union Carbide v. Huddleston,* 854 S.W.2d 87, 94 (Tenn.1993) (rejects existence of alternative functional test in disallowing tax). *Contra Atlantic Richfield Co. v. State,* 198 Colo. 413, 601 P.2d 628, 632 (1979) (allowing tax on transactional test theory); *Tipperary Corp. v. New Mexico Bureau of Revenue,* 93 N.M. 22, 29, 595 P.2d 1212, 1219 (1979) (same).

We think the test for identifying business income under Iowa Code section 422.32(2) is basically transactional, existing largely though not exclusively in those situations described by the first sixteen words quoted earlier. The concluding twenty-six words, source of the so-called functional test, are added to include transactions involving disposal of fixed assets by taxpayers who emphasize the trading of assets as an integral part of regular business. *See General Care Corp. v. Commissioner of Revenue,* 705 S.W.2d 642, 645 (Tenn.1986) (in looking to the function of an asset, the "acquisition, management and disposition" must be considered in making the determination, all must be integral parts of the taxpayer's regular trade or business operations). We take from the stipulation that Phillips' ownership of the disposed assets was for purposes of petroleum production, not for trading purposes. We conclude that the sale of Phillips' assets did not constitute "business income" under the functional test theory.

■ II. The trial court did not reach the functional test; rather it rested its decision allowing the tax on the basis of the transactional test. We cannot agree that the transactional test was met because we think the

sale did not occur in the regular course of Phillips' business. To be sure a complete liquidation did not occur, a point the trial court considered significant. The enormity of the disposition was nevertheless unprecedented, clearly a once-in-a-corporate-lifetime occurrence. *Atlantic Richfield,* 198 Colo. at 417, 601 P.2d at 631 (stating that the crucial inquiry under the transactional test is the frequency and regularity of the activity).

The disposition of assets here was irregular, not only in its scope, but also in its nature. It did not occur as an accommodation of Phillips' petroleum production. Rather the transaction was aimed at a wholesale restructuring of the corporation's capital structure.

It was error to disallow the income tax refund on the ground that the sale of assets was business income under Iowa Code section 422.32(2).

**REVERSED.**