DA 08-0026

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 5

GANNETT SATELLITE INFORMATION
NETWORK, INC.,

        Petitioner and Appellant,

  v.

STATE OF MONTANA, DEPARTMENT
OF REVENUE,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2007-514
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Michael W. Green and Joseph P. Mazurek, Crowley, Haughey, Hanson,
Toole & Dietrich, Helena, Montana

                Scott D. Smith, Attorney at Law, Washington, D.C.

        For Appellee:

                Brendan R. Beatty and Derek R. Bell, Special Assistant Attorneys General,
Department of Revenue, Helena, Montana

        For Amicus:

                Bruce J. Fort, Multistate Tax Commission, Santa Fe, New Mexico
Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

Submitted on Briefs:  October 8, 2008

Decided:  January 13, 2009

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Gannett Satellite Information Network, Inc. (GANSAT) appeals an order of the First Judicial District, Lewis and Clark County. The District Court upheld the Montana State Tax Appeal Board (STAB)'s May 17, 2007, order that defined "business income" under § 15-31-302(1), MCA. We affirm.

¶2 We review the following issue on appeal:

¶3 *Did the District Court properly interpret the definition of "business income" in § 15-31-302(1), MCA, to include both a "transactional test" and an independent "functional test" for determining the existence of business income?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Gannett owns an affiliated group (Gannett Group) of newspaper publishing and television broadcasting corporations. GANSAT is a first-tier subsidiary of Gannett. GANSAT publishes the *Great Falls Tribune* and distributes the *USA Today* within Montana. GANSAT was the only member of the Gannett Group doing business in Montana in 2000. As a result, GANSAT served as the "taxpayer" for corporation license tax purposes and was the only member of the Gannett Group to file a Montana corporation license tax return.

¶5 Gannett acquired Cablevision's cable television business as part of its acquisition of Multimedia, Inc. (Multimedia), in 1995. Cablevision, a subsidiary of Multimedia, became a second-tier subsidiary of Gannett. Gannett sold Cablevision for over $2.5 billion in 2000. GANSAT deducted the gain recognized from the sale of Cablevision as nonbusiness income on its 2000 Montana corporation license tax return.

3

¶6    The State of Montana Department of Revenue (DOR) denied GANSAT's deduction. GANSAT appealed to STAB. GANSAT argued that DOR improperly had included Cablevision in the same unitary group with Gannett and GANSAT. GANSAT further argued that DOR improperly had denied a nonbusiness income deduction for the gain generated from the Cablevision sale pursuant to § 15-31-302(1), MCA.

¶7    STAB granted partial summary judgment to DOR. STAB announced in an initial ruling that § 15-31-302(1), MCA, clearly states "two separate clauses which must be considered in determining whether income is business or nonbusiness income . . . a 'transactional' and a 'functional' test for business income." STAB did not determine whether GANSAT actually owed corporate tax on the sale of Cablevision. STAB separately determined that Gannett, GANSAT, and Cablevision comprised the same unitary group for the purpose of determining corporate tax owing in Montana.

¶8    GANSAT and DOR filed a joint interlocutory appeal with the District Court pursuant to § 15-2-305, MCA. The parties requested the District Court to rule on STAB's construction of § 15-31-302(1), MCA, as containing two separate tests for business income, due to the effect of this conclusion of law on the remaining issues before STAB. The District Court granted the petition for an interlocutory appeal. The District Court affirmed STAB's interpretation of § 15-31-302(1), MCA, as containing a transactional test and a functional test for determining business income. GANSAT appeals.

**STANDARD OF REVIEW**

¶9    We review de novo an agency's conclusions of law to determine if they are correct.

4

*Pesarik v. Perjessy*, 2008 MT 337, ¶ 9, 346 Mont. 236, ¶ 9, 194 P.3d 665, ¶ 9. The same standard of review applies to both the District Court's review of the administrative decision and our subsequent review of the District Court's decision. *Owens v. Montana Dept. of Revenue*, 2007 MT 298, ¶ 12, 340 Mont. 48, ¶ 12, 172 P.3d 1227, ¶ 12.

## DISCUSSION

¶10 *Did the District Court properly interpret the definition of "business income" in § 15-31-302(1), MCA, to include both a "transactional test" and an independent "functional test" for determining the existence of business income?*

¶11 The "unitary business principle" permits a state to tax a corporation on an apportionable share of the multistate business carried on in the taxing state. *Allied Signal, Inc., v. Director, Div. of Taxation*, 504 U.S. 768, 778, 112 S. Ct. 2251, 2258 (1992). Montana, like many other states that use this method of taxation, has adopted almost verbatim the Uniform Division of Income for Tax Purposes Act (UDITPA). *See* § 15-1-601, MCA; *compare* Unif. Div. of Income for Tax Purposes Act, 7A U.L.A. 147-198 (West 2002); *see also Hoechst Celanese Corp. v. Franchise Tax*, 22 P.3d 324, 331 (Cal. 2001). The UDITPA has two main objectives: (1) to promote uniformity in allocation practices among the states that impose taxes on the income of corporations, and (2) to relieve the pressure for congressional legislation in this field. Approximately twenty-two states have adopted the UDITPA. *Hoescht*, 22 P.3d at 331.

¶12 Montana is also a full-member of the Multistate Tax Commission, the administrative agency for the Multistate Tax Compact (Compact). Section 15-1-601, MCA. The National

5

Conference of Commissioners on Uniform State Laws created the Compact to promote uniformity and compatibility in significant components of state tax systems and to avoid duplicative taxation. Section 15-1-601, Art. I, MCA; *Polaroid Corp. v. Offerman*, 507 S.E.2d 284, 288 (N.C. 1998), *abrogated on other grounds*, *Lenox Inc. v. Tolson*, 548 S.E.2d 513 (N.C. 2001). The Compact's almost word-for-word incorporation of the UDITPA seeks to promote uniformity among the states with respect to taxation of interstate and foreign commerce. *Polaroid*, 507 S.E.2d at 288.

¶13    Montana uses the UDITPA's definitions to divide all corporate income into two categories – "business income" and "nonbusiness income." *Compare* UDITPA § 1, 7A U.L.A. 147; *with* §§ 15-31-302 and 15-1-601, Art. IV, MCA. All business income is "apportioned to this state" through a formula based on the property, sales, and payroll of the taxpayer. Sections 15-31-305 to 312, MCA. Montana allocates nonbusiness income generally to the state in which the taxpayer is domiciled. Section 15-31-304, MCA; *see also Hoescht*, 22 P.3d at 331. The classification of corporate income as business or nonbusiness determines the tax treatment.

¶14    We turn to the definition of business income as set forth in § 15-31-302(1), MCA. The statute defines "[b]usiness income" as "income arising from the transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Section 15-31-302(1), MCA. "Nonbusiness income" simply "means all income other than business

6

income." Section 15-31-302(4), MCA. GANSAT and DOR debate the proper construction of the statutory definition of business income.

¶15    GANSAT and DOR agree that the first clause of § 15-31-302(1), MCA, constitutes the "transactional test." This first clause provides that business income means "income arising from transactions and activity in the regular course of the taxpayer's trade or business." The parties dispute the import of the second clause. The second clause provides that business income "includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

¶16    GANSAT contends that the District Court's interpretation of the statute renders the first clause "mere surplusage." GANSAT instead suggests that the second clause modifies the first clause. GANSAT argues that Montana's definition of business income consists of a single transactional test. DOR agrees with the District Court that the second clause constitutes a separate "functional test" for determining whether certain income is business income. The Multistate Tax Commission supports DOR's position that the statutory definition of business income contains a separate functional test.

¶17    A majority of jurisdictions interpret the UDITPA's definition of business income to include a separate functional test for business income. *Hoechst*, 22 P.3d at 336. Some glean the functional test from the UDITPA's plain language. *See, e.g., Polaroid*, 507 S.E.2d at 289-93; *The Kroger Company v. The Dept. of Revenue*, 673 N.E.2d 710, 714 (Ill. 1996). Others find the definition of business income ambiguous, and construe the statute to include

7

the functional test using extrinsic aids, such as the UDITPA's legislative history and the UDITPA's policy and goals. *See, e.g.*, *Hoechst*, 22 P.3d at 332-41. All of these jurisdictions conclude that the functional test includes corporate income as business income if it arises from the disposition of an asset that the taxpayer had used in the regular course of its business. *See, e.g.*, *Hoechst*, 22 P.3d at 337.

¶18    By contrast, a minority of jurisdictions interpret the UDITPA's definition of business income as containing only the transactional test. *Hoechst*, 22 P.3d at 336. Under this view, the word "includes" as used in the statute makes the second clause a qualifying clause that modifies the first clause and "serves to exemplify what fits within the definition." *Ex Parte Uniroyal Tire Co.*, 779 So. 2d 227, 232 (Ala. 2000). These courts view the second clause as a means of clarifying that "business income" includes the sale of "fixed assets by taxpayers who emphasize the trading of assets as an integral part of regular business." *Hoechst*, 22 P.3d at 333 (citing *Phillips Petroleum v. Dept. of Revenue*, 511 N.W.2d 608, 610 (Iowa 1993)). The nature of the particular transaction, according to this view, constitutes the controlling factor in identifying business income under the transactional test. These factors include "the frequency and regularity of similar transactions, the former practices of the business, and the taxpayer's subsequent use of the income." *Hoechst*, 22 P.3d at 336; *see also May Dept. Stores v. Indiana Dept. of State Revenue*, 749 N.E.2d 652, 658-59 (Ind. 2001).

¶19    We construe a statute to ascertain the legislative intent and give effect to the legislative will. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, ¶ 11, 152 P.3d 1288,

8

¶ 11. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. *Letasky*, ¶ 11. We must avoid a statutory construction that renders any section of the statute superfluous or fails to give effect to all of the words used. *Montana Trout Unlimited v. Montana DNRC*, 2006 MT 72, ¶ 23, 331 Mont. 483, ¶ 23, 133 P.3d 224, ¶ 23.

¶20     We interpret a statute first by looking to its plain language. Language that is clear and unambiguous requires no further interpretation. *Letasky*, ¶ 11. We turn to extrinsic aids, however, when we cannot garner the legislature's intent from the plain meaning of the words used in the statute. *Matter of Estate of Garland*, 279 Mont. 269, 273-74, 928 P.2d 928, 930 (1996). The statute's legislative history provides a possible aid in interpretation. *Montana Vending v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, ¶ 21, 78 P.3d 499, ¶ 21. We also find relevant the history surrounding the creation and adoption of a uniform act. *Montana Dept. of Soc. and Rehabilitation v. Angel*, 176 Mont. 293, 296-97, 577 P.2d 1223, 1225 (1976).

¶21     We look to the language of § 15-31-302(1), MCA. "Business income" serves as the subject of the sentence. The statute defines business income with two independent clauses. Each of the clauses contains its own verb and subsequent definitional language. The definition arguably contains a "compound predicate" that states two independent definitions of business income. *See Hoechst*, 22 P.3d at 333 (citing *Kroger*, 673 N.E.2d at 713). We could read the statute grammatically as: "'Business income' means income arising from the transactions and activity in the regular course of the taxpayer's trade or business and [business income] includes income from tangible and intangible property if the acquisition,

9

management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." *Hoechst*, 22 P.3d at 333; *Polaroid*, 507 S.E.2d at 290.

¶22 This interpretation accords with the different language used in the two separate clauses. The first clause focuses on "transactions and activity" and their relationship to the taxpayer's trade or business. *Hoechst*, 22 P.3d at 333. The second clause focuses on "property" and its relationship to the taxpayer's trade or business. *Hoechst*, 22 P.3d at 333. The different language suggests that the second clause contains a definition distinct from that set forth in the first. *See Hoechst*, 22 P.3d at 333; *Polaroid*, 507 S.E.2d at 291; *Kroger*, 673 N.E.2d at 714. The District Court concluded that to read the statute as containing only a transactional test essentially would erase the second clause of the statute. The District Court recognized that this interpretation would thereby exclude from "business income" any partial disposition of property because such a transaction would not fall within any taxpayer's regular trade or business.

¶23 DOR and GANSAT dispute whether *Mont. Dept. of Rev. v. Am. Smelting and Refining*, 173 Mont. 316, 567 P.2d 901 (1977) (ASARCO), supports reading the definition of business income as containing a separate functional test. In *ASARCO*, the district court determined that certain of ASARCO's out-of-state income, including gains from the sale of properties, should not be apportioned with its Montana operations. *ASARCO*, 173 Mont. at 321-22, 567 P.2d at 904-05. This Court reversed. *ASARCO*, 173 Mont. at 331, 567 P.2d at 909. The Court instead applied the equivalent of the "functional test" based upon its review

10

of the same statutory language as used in the current § 15-31-302(1), MCA. *ASARCO*, 173 Mont. at 325-26, 567 P.2d at 906-09.

¶24    The Court determined that DOR correctly had apportioned a share of the out-of-state gains to Montana because the income was "derived from sources that are integral parts of its business." *ASARCO*, 173 Mont. at 326, 567 P.2d at 907. The Court characterized as "not new or unique" the concept of including income from the sale of property and income derived from rents, royalties, and interest within a taxpayer's apportionable net income. *ASARCO*, 173 Mont. at 327, 567 P.2d at 907. The California Supreme Court and the District of Columbia Court of Appeals both agree with DOR's position on *ASARCO*. Both courts analyzed *ASARCO* and cited it for the proposition that Montana recognizes a separate functional test for business income. *Hoechst*, 22 P.3d at 334 n. 6, 342; *District of Columbia v. Pierce Associates*, 462 A.2d 1129, 1132 (D.C. 1983).

¶25    STAB also has applied the equivalent of the "functional test" consistently in determining whether the sale of out-of-state real or personal property used in the business should be taxable to a unitary corporation. STAB determined that DOR correctly had apportioned to Montana gain from the sale of Oregon logging equipment where the taxpayer had not converted the equipment to another business or to a nonbusiness purpose before its sale. *Harvey Zoon & Sons Logging Co v. Dept. of Revenue*, CT-1994-5. STAB similarly determined that DOR properly had apportioned to Montana gain from the sale of Illinois real estate where the taxpayer had designated the property as income producing property before its sale. *Decatur Dev., Inc. v. Dept. of Revenue*, CT-1996-3.

11

¶26    We also reasonably could read the definition of business income, however, to contain only a transactional test. The use of the word "includes" after the conjunction linking the two clauses could suggest that the second clause represents a subset of the first. The use of the word "and" in the phrase "acquisition, management, and disposition of property must be integral parts" might suggest that the second clause merely exemplifies the first clause. *Uniroyal Tire*, 779 So. 2d at 232. Under this view, the disposition, acquisition, and management of the property must "constitute an integral part of the taxpayer's trade or business." *Uniroyal Tire*, 779 So. 2d at 233-34. If the transaction is an extraordinary one, it arguably could not constitute an integral part of the taxpayer's regular trade or business. *See Uniroyal Tire*, 779 So. 2d at 234.

¶27    We deem the statutory language to be ambiguous and reasonably susceptible to either interpretation of "business income." *Letasky*, ¶ 11. We cannot agree with the District Court's conclusion that the language of § 15-31-302(1), MCA, clearly sets forth both a transactional test and a functional test for determining business income. We must look to extrinsic aids therefore to determine the legislature's intent. *Estate of Garland*, 279 Mont. at 273-74, 928 P.2d at 930. The District Court likewise examined extrinsic evidence, and concluded that the evidence clearly contemplated the use of a functional test in determining business income.

¶28    As noted by the parties, Montana's limited legislative history regarding adoption of the UDITPA proves generally unhelpful in determining the meaning of business income. *Montana Vending*, ¶ 21. Montana's nearly verbatim adoption of the UDITPA prompted little

12

discussion of individual provisions. We look to the UDITPA's legislative history and official comments in light of Montana's adoption of the UDITPA and verbatim adoption of the UDITPA's definition of business income. *Angel*, 176 Mont. at 296-97, 577 P.2d at 1225.

¶29 The UDITPA's legislative history suggests the existence of a separate functional test in the definition of business income. The California Supreme Court conducted a "carefully reasoned" and "detailed" inquiry into the legislative history, policy, and goals of UDITPA. Walter Hellerstein, *The Business-Nonbusiness Income Distinction and the Case for its Abolition*, 92 Tax Notes 1701, 1712 (2001) (describing *Hoechst*, 22 P.3d 324). The court determined that the legislative history behind the UDITPA "strongly supports the inclusion of a functional test." *Hoechst*, 22 P.3d at 334.

¶30 The UDITPA's legislative history reveals that the UDITPA definition of "business income" derives from California decisional law. The California courts had employed a separate functional test for business income before development and adoption of the UDITPA by the states. *Hoechst*, 22 P.3d at 334-36. The California courts, in turn, had adopted the functional test from the State Board of Equalization's (California's equivalent of the STAB) consistent practice of applying an independent functional test when evaluating whether income constituted business income. *Hoescht*, 22 P.3d at 334-36. The State Board of Equalization used language virtually identical to the language in the second clause of the UDIPTA's definition of "business income." *Hoescht*, 22 P.3d at 334-35. The *Hoechst* court concluded that income constitutes "business income" under the functional test "if the

13

taxpayer's acquisition, control, and use of the property contribute materially to the taxpayer's production of business income." *Hoechst*, 22 P.3d at 339.

¶31     The UDITPA's official comments further suggest its drafters' intent to carry forward the independent functional test into the UDITPA.  *See Hoechst*, 22 P.3d at 335; *Texaco-Cities Service Pipeline v. McGaw*, 695 N.E.2d 481, 486 (Ill. 1998).  Two separate comments provide that "[i]ncome from the disposition of property used in a trade or business of the taxpayer is includible within the meaning of business income." *See* UDITPA, 7A U.L.A., §§ 1(a) and 1(g), Comments, Cumulative Annual Pocket Part 96-97.  These comments led the Illinois Supreme Court to conclude that "the [functional] test was adopted directly from the comments underlying the UDITPA." *Texaco-Cities*, 695 N.E.2d at 486.

¶32     We also note that no principle demands that income generated by the sale of an asset be treated differently from income that the asset may have generated while the taxpayer used the asset in its business.  The sale of the asset may constitute an unusual or even extraordinary transaction for the taxpayer.  This fact alone fails, however, to justify allocating the proceeds of the transaction to a single state rather than apportioning the income among all of the states in which the taxpayer operates.  Hellerstein, 92 Tax Notes at 1715-16.  Indeed, to construe § 15-31-302(1), MCA, as containing only a single transactional test would result in a single state reaping all of the tax revenue from a unitary business's sale of property in that particular state.  This outcome would defeat the UDITPA's purpose of apportioning a unitary business's tax liability across all states in which the business operates.

14

This outcome also would encourage taxpayers to locate physical assets in those states with the lowest tax rates to save money when it sold those assets.

¶33 Moreover, a business runs the risk of double taxation of business income if the jurisdiction in which it sold the property applied the transactional test while another jurisdiction in which the business operates applied the independent functional test. *See* Hellerstein, 92 Tax Notes at 1714. For example, the Oregon Supreme Court in *Simpson Timber Company v. Dept. of Rev.*, 953 P.2d 366, 370 (Or. 1998), held that a share of the gain realized from the condemnation of California timberlands owned by a lumber company should be subject to apportionment in Oregon on the grounds that the timberlands constituted part of the lumber company's unitary business.

¶34 A similar scenario would result in double taxation if Montana applied the transactional test, as advocated by GANSAT, to a Montana lumber company, operating a unitary business in Montana, California, and Oregon, that sold its Montana timber holdings. Montana would ignore the asset's role in the unitary business if it determined the sale to be unusual or extraordinary. Montana would allocate the entire gain to Montana. California and Oregon, by contrast, would apportion a share of the gain to their respective states, under the independent functional test applied in those jurisdictions, because the assets proved integral to the taxpayer's unitary business. *Simpson Timber*, 953 P.2d at 370.

¶35 This scenario highlights the strong policy reasons that support interpreting § 15-31-302(1), MCA, to include both the transactional test and an independent functional test. *See* Hellerstein, 92 Tax Notes at 1715. The UDITPA seeks to promote uniformity in the taxation

15

of the income of corporations. *Hoescht*, 22 P.3d at 331. A majority of jurisdictions have interpreted the UDITPA definition of business income as containing a separate functional test. *See, e.g.*, *Texaco-Cities*, 695 N.E.2d at 486 (Illinois); *Hoechst*, 22 P.3d at 336 (California); *Polaroid*, 507 S.E.2d at 290-93 (North Carolina); *Pierce Associates*, 462 A.2d at 1131 (District of Columbia); *Willamette Industries v. Dept. of Rev.*, 15 P.3d 18, 21-22 (Or. 2000).

¶36 Courts in several states that have adopted the UDITPA admittedly have found the definition of business income to contain solely a transactional test. *See, e.g.*, *Uniroyal Tire*, 779 So. 2d at 238 (Alabama); *Phillips Petroleum*, 511 N.W.2d at 610 (Iowa); *Appeal of Chief Industries, Inc.*, 875 P.2d 278, 286 (Kan. 1994); *Associated Partnership I, Inc. v. Huddleston*, 889 S.W.2d 190, 195 (Tenn. 1994). The legislatures in a majority of these jurisdictions promptly changed the statute, however, to reflect a functional test. *See Hoechst*, 22 P.3d at 336 (citing Iowa Code § 422.32; Kan. Stat., § 79-3271(a); Tenn. Code Ann., § 67-4-2004). Thus, at present "[v]irtually all states adopting the UDITPA now construe the second clause of the business income definition as a separate functional test." *Hoechst*, 22 P.3d at 336. To construe § 15-31-302(1), MCA, as containing a separate functional test therefore comports with the goals of both the UDITPA and the Compact of promoting uniformity in the taxation of corporations by the states.

¶37 The District Court properly determined that § 15-31-302(1), MCA, contains both a transactional test and a separate functional test for determining the existence of business income. The District Court purported to apply a plain language analysis. We note, however,

16

that the District Court also examined extrinsic evidence of the legislature's intent.  We reach this conclusion based upon our combined review of the language of § 15-31-302(1), MCA, extrinsic aids, such as the UDIPTA's legislative history, and the UDIPTA's goals of promoting uniformity among states in the taxation of corporations.  We leave it to STAB to determine, in the first instance, whether GANSAT owes any corporate tax on the sale of Cablevision.

¶38    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE