DA 09-0197

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 388

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KODIAK QUESNEL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 02-148
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Edmund F. Sheehy, Jr., Regional Deputy Public Defender; Missoula,
Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

            George Corn, Ravalli County Attorney; T. Geoffrey Mahar, Deputy
County Attorney; Hamilton, Montana

Submitted on Briefs:  October 14, 2009

Decided:  November 17, 2009

Filed:

_____
                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Kodiak Quesnel (Quesnel) appeals the order of the District Court of the Twenty-First Judicial District, Ravalli County, revoking his suspended sentence, committing him to the custody of the Montana Department of Corrections (DOC) for fifteen years, and conditioning his parole eligibility on completion of sex offender treatment. We affirm in part, reverse in part, and remand to the District Court.

¶2 We consider the following issues on appeal:

¶3 1. Whether the District Court exceeded its authority in sentencing Quesnel to a fifteen-year commitment to DOC.

¶4 2. Whether the District Court exceeded its authority in conditioning Quesnel's eligibility for parole on completion of sex offender treatment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 In September 2002 the State moved for leave to file an information in the District Court charging Quesnel with one count of sexual intercourse without consent and one count of sexual assault, alleging that on one occasion, upon Quesnel's insistence, Quesnel and an eleven-year-old boy engaged in mutual masturbation. The State also alleged that on other occasions Quesnel forced the boy to perform oral sex on him and that Quesnel performed oral sex on the boy. Though Quesnel was fifteen years old at the time of the alleged events, the State sought to charge him as an adult pursuant to § 41-5-206(1), MCA. The District Court granted the State leave to file the charges against Quesnel, as an adult. Quesnel initially pled not guilty to both charges.

2

¶6 Both Quesnel and the State then moved on multiple occasions to continue Quesnel's transfer hearing, required by § 41-5-206(3), MCA. First, on October 21, 2002, Quesnel, through appointed counsel, moved to continue his transfer hearing in the case to November 27, 2002. The District Court granted the continuance. Then in November the State moved, without objection from Quesnel, to continue the transfer hearing. Again the District Court granted the continuance. Quesnel then moved once more to continue the transfer hearing, and the District Court again granted the continuance. Subsequently, in January 2003, Quesnel moved to continue the transfer hearing "without date." The District Court then continued the transfer hearing to April 2004. In March 2004 Quesnel changed his plea to guilty to both charges pursuant to a plea agreement in which the State recommended six-year deferred sentences for each count, to run concurrently. At the change of plea hearing, Quesnel waived the transfer hearing on the record.

¶7 The District Court accepted Quesnel's guilty pleas and in August 2004 sentenced him to a six-year deferred imposition of sentence for each count, to run concurrently, subject to numerous conditions. In its judgment, the District Court recognized that Quesnel, himself, had been a victim of sexual abuse, had been orphaned, and had been diagnosed with mental illness—post-traumatic stress disorder and major depressive disorder. The District Court further remarked that the deferred sentence was appropriate to allow for rehabilitation and eventual expungement or, if probation were to fail, to allow for maximum public security.

3

¶8 Following Quesnel's sentencing, the State petitioned five times to revoke the deferred sentence. The District Court's ruling on the State's fifth revocation petition is now at issue. The State filed its fifth petition in October 2008, alleging that Quesnel had violated five conditions of his suspended sentence by not notifying his probation officer (PO) of his residence, traveling outside his assigned district without permission, failing to maintain regular employment, failing to attend appointments with a counselor for sex offender treatment, and having contact with people under age eighteen by being in the residence of the woman who had young children. The State later amended its petition to include an additional alleged violation by Quesnel for using methamphetamine. Quesnel admitted to all violations. The District Court sentenced Quesnel to a fifteen-year commitment to DOC, recommending placement at the Montana State Prison. The District Court further ordered Quesnel's eligibility for parole to be conditioned on his completion of sex offender treatment. Quesnel appealed.

## STANDARD OF REVIEW

¶9 We review a sentence in a criminal case for legality, to determine if the sentence is within statutory confines. *State v. Burch*, 2008 MT 118, ¶ 12, 342 Mont. 499, 182 P.3d 66. Because a district court's sentencing authority is defined by statute, a sentence that strays beyond the bounds of statutory authority is illegal. *Burch*, ¶ 12.

DISCUSSION

¶10 *Issue 1: Whether the District Court had authority to sentence Quesnel to a fifteen-year commitment to DOC.*

¶11 Quesnel contends that the District Court lacked authority to sentence him to a fifteen-year commitment with DOC with none suspended because § 46-18-201(3)(d)(i), MCA (2001), requires all but the first five years of any commitment to DOC to be suspended.[1] The State submits that the District Court was authorized to sentence Quesnel as it did, pursuant to § 46-18-201(3)(d)(ii), MCA (2001), which does not require suspension of any portion of a commitment to DOC.[2] Resolution of this dispute turns on the interactions between subsection (3)(d)(i), subsection (3)(d)(ii), and § 41-5-206, MCA.

¶12 Subsection (3)(d)(i) authorizes a district court to impose a sentence that includes "a commitment of . . . an offender not referred to in subsection (3)(d)(ii) to the department of corrections, with a recommendation for placement in an appropriate correctional facility or program; however, all but the first 5 years of the commitment to the department of corrections must be suspended." Subsection (3)(d)(ii), however, authorizes a district court to impose a sentence that includes commitment of "a youth transferred to district court under 41-5-206 and found guilty in the district court of an offense enumerated in 41-5-206 to the department of corrections for a period determined

---

[1] A district court must sentence a criminal defendant under the law in effect when the defendant committed the crime. *State v. Flanagan*, 2003 MT 123, ¶ 31, 316 Mont. 1, 68 P.3d 796. Here, Quesnel committed sexual intercourse without consent and sexual assault in the late summer or early autumn of 2001. Therefore, § 46-18-201, MCA (2001), governed the District Court's authority to sentence Quesnel.

[2] For the sake of brevity, we will refer to § 46-18-201(3)(d)(i), MCA (2001), as "subsection (3)(d)(i)" and to § 46-18-201(3)(d)(ii), MCA (2001), as "subsection (3)(d)(ii)."

by the court for placement in an appropriate correctional facility or program." The exemption provided by subsection (3)(d)(ii) gives a district court the flexibility to sentence a youth offender to a long term of supervision without necessarily incarcerating the youth in a state prison. *State v. Strong*, 2009 MT 65, ¶¶ 22-24, 349 Mont. 417, 203 P.3d 848.

¶13 Section 41-5-206(1), MCA, provides a procedure for a county attorney to file charges directly in district court against a youth alleged to have committed any of certain enumerated crimes. Section 41-5-206(1)(a)(i), MCA, allows a county attorney to seek leave to file an information in district court if "the youth charged was 12 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act would if it had been committed by an adult constitute . . . sexual intercourse without consent as defined in 45-5-503." Section 41-5-206(5)(b), MCA, allows "[a]n offense not enumerated in [§ 41-5-206(1), MCA] that arises during the commission of a crime enumerated in [§ 41-5-206(1), MCA]" to be "transferred to district court with an offense enumerated in [§ 41-5-206(1), MCA] upon motion of the county attorney and order of the district court."

¶14 Here, the State, in its motion for leave to file an information, declared its intention to try Quesnel, a minor at the time, as an adult in District Court under § 41-5-206(1)(a), MCA, for sexual intercourse without consent and, apparently, under § 41-5-206(5)(b), MCA, for sexual assault. Quesnel eventually pled guilty to both charges, and the District Court sentenced him to a fifteen-year commitment to DOC with no time suspended. The

question before the Court is whether the District Court had authority to sentence Quesnel under subsection (3)(d)(ii), or whether, as Quesnel contends, the District Court was required to sentence him pursuant to subsection (3)(d)(i).

¶15 Quesnel maintains that subsection (3)(d)(i) should control (and thus that all but the first five years of his commitment to DOC should have been suspended) because he was not "transferred" to the District Court under § 41-5-206, MCA. Relying heavily on the rule of statutory interpretation that a court must give effect to the plain language of a statute, Quesnel correctly points out that subsection (3)(d)(ii) applies to "a youth transferred to district court under 41-5-206." "Transfer" denotes movement from one location to another. *Black's Law Dictionary* 1536 (Bryan A. Garner ed., 8th ed., West 2004). Here, however, the State filed the charges against Quesnel directly in the District Court pursuant to § 41-5-206(1), (5)(b), MCA. Accordingly, Quesnel reasons, he was not transferred (i.e., from youth court) to the District Court, so subsection (3)(d)(ii) does not apply. Therefore, subsection (3)(d)(i) applies as the default provision, and the District Court was required to suspend all save the first five years of Quesnel's commitment to DOC.

¶16 The flaw in Quesnel's argument is that while statutory interpretation necessarily begins with the text of the statute, it does not necessarily end there. Our ultimate goal in interpreting a statute is "to ascertain and give effect to the legislative intent." *Shelby Distributors, LLC v. Mont. Dept. of Revenue*, 2009 MT 80, ¶ 18, 349 Mont. 489, 206 P.3d 899. To do so, we not only look to the text of the statute but also consider the

statute in the context of the greater statutory scheme and construe the statute to advance the purpose of that scheme, giving meaning to all its provisions. *State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448; *Gamble v. Sears*, 2007 MT 131, ¶ 59, 337 Mont. 354, 160 P.3d 537. When unable to discern the legislature's intent from the statutory text, we may consider the statute's legislative history. *Gannett Satellite Info. Network, Inc. v. State*, 2009 MT 5, ¶ 20, 348 Mont. 333, 201 P.3d 132.

¶17 Here, viewed in the larger statutory context, the text of subsection (3)(d)(ii)—specifically "transferred to district court under 41-5-206"—is unclear. Section 41-5-206(1), MCA, the statute's principal provision,[3] describes a procedure, not for transferring a youth to district court, but for filing charges against a youth directly in district court. To be sure, one provision of § 41-5-206, MCA—subsection (5)—does describe a procedure for transferring charges to district court. However, to interpret subsection (3)(d)(ii) to refer solely to § 41-5-206(5), MCA, gives rise to additional difficulties. First, the transfer procedure outlined in § 41-5-206(5), MCA, only involves the transfer of lesser, unenumerated offenses that arise during the commission of any of the serious, enumerated offenses for which charges may be filed directly in district court pursuant to § 41-5-206(1), MCA. But given that subsection (3)(d)(ii) applies to a youth "transferred to district court . . . and found guilty in the district court of an offense enumerated in 41-5-206," it would appear illogical for subsection (3)(d)(ii) to apply only to § 41-5-206(5), MCA, which does not apply to enumerated offenses. Moreover, there

---

[3] Section 41-5-206, MCA, is captioned, "Filing in district court prior to formal proceedings in youth court."

is no apparent reason why the legislature would have intended to limit the benefit of subsection (3)(d)(ii)—granting a district court flexibility to sentence a youth to a long period of supervision without incarcerating the youth in a state prison—to only that subgroup of youths who appear in district court pursuant to § 41-5-206(5), MCA. For these reasons, we do not discern a clear legislative intent from the text of subsection (3)(ii). We, therefore, turn to the legislative history of subsection (3)(d)(ii) to shed light on this matter.

¶18    The legislative history indicates that the legislature intended subsection (3)(d)(ii) to apply to a youth in district court pursuant to the procedure in 41-5-206(1), MCA. The legislature enacted subsection (3)(d)(ii) in 1999. 1999 Mont. Laws ch. 505, sec. 1. The original version of the bill that became subsection (3)(d)(ii) specifically referred to a youth transferred to district court under § 41-5-201(1), MCA. Mont. H. 81, 56th Leg., Reg. Sess. 2 (Dec. 14, 1998).[4] Although the legislature removed this specific reference from the final version of the bill, the legislative debate surrounding the amendment removing the reference indicated no intent to alter the operation of the provision. Mont. H. Jud. Comm., *Executive Action on HB 115*, 56th Leg., Reg. Sess. (Jan. 19, 1999) (House recording tape no. 2, side B). Indeed, the debate confirmed that the provision was intended to grant district courts flexibility in sentencing youth offenders. Mont. H. Jud. Comm., *Executive Action on HB 115*, (House recording tape no. 2, side B, tape no. 3, side

---

[4] The House Judiciary Committee subsequently merged House Bill 81 into House Bill 115. Mont. H. 115.02, 56th Leg., Reg. Sess. 3 (as reported by the House Judiciary Committee on Jan. 19, 1999).

A). Thus, we conclude that the text of subsection (3)(d)(ii), as originally enacted, was intended to apply to any youth transferred to district court under § 41-5-206(1), MCA. This interpretation is consistent with the language of subsection (3)(d)(ii) that limits its application to a youth "found guilty in the district court of an offense enumerated in 41-5-206." This interpretation also advances the purpose of subsection (3)(d)(ii), which is to enable a district court to sentence a youth found guilty of a serious crime to a long period of supervision without necessarily incarcerating the youth. *Strong*, ¶¶ 22-24.

¶19 Nevertheless, this conclusion returns us to the incongruity of the term "transfer" used in subsection (3)(d)(ii) and § 41-5-206(1), MCA, which does not allow for the transfer of a youth to district court, but allows a county attorney to file charges against a youth directly in district court. Were we to interpret "transfer" literally, it would effectively nullify subsection (3)(d)(ii) given that § 41-5-206(1), MCA, does not create a procedure for a youth to be transferred to district court. This we will not do if another reasonable interpretation is available. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. Here, the reasonable alternative interpretation is that the legislature intended subsection (3)(d)(ii) to apply to any youth who appears in district court pursuant to the procedures from § 41-5-206, MCA, and who is found guilty of an enumerated offense. The apparent explanation for the term "transfer" is that the legislature's use of the term was an inadvertent reference to the prior version of § 41-5-206(1), MCA, which did not allow a county attorney to file charges against a youth directly in district court, but required the county attorney first to file charges in youth court and then move the

district court to *transfer* the case to district court. Section 41-5-206(1), MCA (1995). This earlier version of § 41-5-206(1), MCA, had been in effect since 1974. 1974 Mont. Laws ch. 329, sec. 29. In 1997 the legislature amended this earlier version (which at the time was captioned "Transfer to criminal") to allow direct filing of charges in district court. 1997 Mont. Laws, ch. 550, sec. 18. Though the original version of subsection (3)(d)(ii) was enacted two years later in 1999, it appears that the legislature inadvertently employed the term "transfer" from the pre-1997 version of § 41-5-206(1), MCA. We rectify this apparent oversight in order to give effect to the legislative intent behind subsection (3)(d)(ii), and accordingly we interpret this subsection to apply not only to a youth "transferred" to district court, but to any youth who appears in district court pursuant to the provisions of § 41-5-206, MCA.

¶20 Under this reading of the statute, there is no question that Quesnel appeared before the District Court pursuant to § 41-5-206, MCA, and that he was found guilty of an enumerated offense. Therefore, subsection (3)(d)(ii), rather than subsection (3)(d)(i), governed the District Court's sentence. Since subsection (3)(d)(ii) does not require a district court to suspend all but the first five years of a commitment, the District Court did not exceed its authority when it sentenced Quesnel to a commitment to DOC for fifteen years with none suspended. Consequently, we affirm this portion of the District Court's sentence.

¶21 Quesnel remonstrates that he was not properly before the District Court for the sake of subsection (3)(d)(ii) because the District Court failed to hold a hearing within

11

thirty days after granting the State leave to file the information, as mandated by § 41-5-206(3), MCA. This argument lacks merit.

¶22 Section 41-5-206(3), MCA, reads in relevant part:

> The district court shall grant leave to file the information if it appears from the affidavit or other evidence supplied by the county attorney that there is probable cause to believe that the youth has committed the alleged offense. Within 30 days after leave to file the information is granted, the district court shall conduct a hearing to determine whether the matter must be transferred back to the youth court, unless the hearing is waived by the youth or by the youth's counsel in writing or on the record. The hearing may be continued on request of either party for good cause.

Here, the District Court granted the State leave to file the information charging Quesnel on September 25, 2002. The District Court never held a hearing to determine whether the matter should be transferred to youth court, and on March 3, 2004—well beyond the thirty days mentioned in the statute—Quesnel waived the hearing on the record. This, however, does not mean that Quesnel was improperly before the District Court. Section 41-5-206(3), MCA, allows either party to continue the hearing. The reason the hearing was not conducted within thirty days of the District Court's granting leave to file the information was that both parties, on multiple occasions, moved to continue the hearing. At no point did Quesnel object to continuance of the hearing. Accordingly, we conclude that Quesnel was not improperly before the District Court under § 41-5-206, MCA.

¶23 ***Issue 2: Whether the District Court had authority to condition Quesnel's eligibility for parole on completion of sex offender treatment.***

¶24 Quesnel's second argument on appeal is that the District Court lacked statutory authority to impose a parole restriction—conditioning eligibility for parole on completion

of sex offender treatment—on his commitment to DOC. Quesnel contends that the District Court's authority to restrict an offender's eligibility for parole in § 46-18-202(2), MCA, is limited to when the District Court imposes a sentence of incarceration in a state prison. The State concedes this issue. Accordingly, we reverse the District Court's conditioning Quesnel's eligibility for parole on completion of sex offender treatment, and we remand the case to the District Court to delete this parole restriction.

¶25 We affirm in part, reverse in part, and remanded to the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE