FILED

March 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0584

DA 14-0584

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 69

RUSTY LEE-RAY RUSSELL,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DV 10-480
                  Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

             Elizabeth L. Griffing, Axilon Law Group, PLLC, Missoula, Montana

       For Appellee:

             Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
             Attorney General, Helena, Montana

             Scott D. Twito, Yellowstone County Attorney, Ed Zink, Deputy County
             Attorney, Billings, Montana

                           Submitted on Briefs:  January 6, 2016

                                    Decided:  March 22, 2016

Filed:

                                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Rusty Lee-Ray Russell appeals from the District Court's Findings of Fact, Conclusions of Law and Order dated July 7, 2014, denying his petition for postconviction relief. We affirm.

¶2 We restate the issues on appeal as follows:

Issue One: Whether Russell received effective assistance of counsel at trial based upon allegations that counsel failed to research and understand the principles of felony murder; failed to properly move for dismissal of that charge; and failed to offer proper instructions on felony murder.

Issue Two: Whether Russell received effective assistance of counsel on appeal based upon allegations that counsel failed to understand the principles of felony murder and failed to attack the sufficiency of the evidence to support a conviction of that charge.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On April 25, 2005, Russell and an acquaintance named Spotted Wolf spent a day "drinking across Billings." In the middle of the night they went into an alley-type area behind some buildings to continue drinking in a place where they would not be seen by police. In the alley Spotted Wolf saw a sleeping transient (Wallin). Spotted Wolf confronted Wallin, striking him with his hands, demanding alcohol or money. Russell then handed Spotted Wolf a knife that Russell had stolen earlier in the day, and Spotted Wolf used it to slash Wallin across the face. Spotted Wolf then gave the knife back to Russell, telling him to show what he was made of and what he could do. Russell used the knife to stab Wallin several times.

2

¶4 Russell then walked a few steps to where another transient (Gewanski) was sleeping. Russell beat Gewanski and stabbed him multiple times with the knife, killing him. Russell walked back to Wallin, and he and Spotted Wolf continued the assault as Wallin tried to get away. Another man named Rideshorse was present and intervened to stop the renewed attack on Wallin. Russell struck Rideshorse and said "Let's do this guy." Spotted Wolf declined, and he and Russell fled.

¶5 Rideshorse went out into the street and hailed a police car. Wallin was seriously and permanently injured by Russell and Spotted Wolf. Upon arrest, police found blood from both Wallin and Gewanski on Russell's clothing. Police recovered the knife from Spotted Wolf and DNA from both victims was on it. Spotted Wolf pled guilty to charges of deliberate homicide by accountability, to aggravated assault and to robbery.

¶6 The State charged Russell with deliberate homicide for the death of Gewanski (charged as felony murder under § 45-5-102(1)(b), MCA); aggravated assault upon Wallin; accountability for Spotted Wolf's robbery of Wallin; and accountability for Spotted Wolf's aggravated assault of Wallin. The State charged the aggravated assault upon Wallin as the underlying felony to support the felony murder charge against Russell. In May 2005 a jury in Yellowstone County convicted Russell of each of the charged offenses, and the District Court sentenced Russell to terms of imprisonment. Russell appealed to this Court, which reversed the conviction for aggravated assault against Wallin because it was an included offense of the charge of felony murder. This Court affirmed the remainder of the convictions. *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P.3d 271 (*Russell I*).

3

¶7    In March 2010 the Criminal Defense Clinic at the University of Montana School of Law filed a petition for postconviction relief on behalf of Russell. The petition contended that Russell's trial counsel were ineffective for failing to argue that the murder of Gewanski did not occur in the course of the assault on Wallin, and therefore the facts did not support the charge of felony murder. The petition further contended that Russell's appellate counsel was ineffective for failing to argue that the aggravated assault on Wallin was not sufficiently casually related to the attack on Gewanski to support the felony murder charge. Eventually Russell filed an amended and a second amended petition; the State responded; and both sides filed affidavits. The District Court conducted an evidentiary hearing on March 19, 2014.

¶8    Several witnesses testified at the hearing on postconviction relief. Penny Strong was Russell's lead attorney at trial and at that time was the Chief Public Defender for Yellowstone County. She testified that she was experienced in the defense of homicide cases, and that she had an adequate support staff and an excellent investigator who identified and interviewed witnesses and examined the physical evidence. Strong personally examined the crime scene, describing it as a passage between two buildings, covering a very small area. She estimated that the distance between the attack upon Wallin and the attack upon Gewanski was smaller than the courtroom in which the hearing was held. She testified that "there really wasn't a separate crime scene for the homicide that involved Mr. Gewanski. It was all one in the same."

¶9    In a statement, Spotted Wolf described the distance between the attack upon Wallin and the attack upon Gewanski as "a few steps." The District Court found that the

4

area in which the crimes occurred was small, 30 to 40 feet long, and that both assaults "were committed *close in time and space*." (Emphasis added.)

¶10 Strong testified that she researched felony murder issues and their application to Russell's case. She was unable to provide details of the research because she no longer worked as a Public Defender and her work materials were not available to her for review prior to the hearing. She was familiar with felony murder charges and believed that from the defense perspective they made convictions easier to obtain. She recalled raising these concerns in her trial brief and through proposed jury instructions. She believed that a specific unanimity instruction was important in the context of a felony murder charge and she offered one, which the District Court refused. She made a general motion to dismiss all charges at the close of the State's case-in-chief, based upon failure of proof.

¶11 Strong testified that she could not find any evidence to support Russell's claim that he was not present at the assaults and the murder. She stated that the State offered plea agreements to both Russell and Spotted Wolf; that Spotted Wolf accepted the plea agreement; and that Russell rejected it and chose to go to trial. She understood that the State's theory of felony murder against Russell was that he started the chain of events that led to Gewanski's death by giving his knife to Spotted Wolf to use in the initial attack upon Wallin. Strong's co-counsel, attorney Claus, explained that prior to sentencing he filed a motion on double jeopardy grounds to dismiss the felony murder predicate offense of assault. In doing so, he argued that the attack upon Wallin and the attack upon Gewanski were part of the same transaction and that therefore the aggravated

5

assault was a lesser included offense of the homicide charge. That argument was ultimately successful in this Court on direct appeal.

¶12 Mark Murphy, the chief criminal deputy for the Yellowstone County Attorney, prosecuted the case against Russell. He testified that he had no doubt that the death of Gewanski happened during the course of the assault upon Wallin. Murphy described his opinion of the evidence:

> With the review of all the evidence we had at the time, it seemed that all of the homicide flowed from the initial robbery, that that was the motivating factor that tied all of the activity together, it was the cause of the homicide.

He described the factual connection between the events:

> Well, it—it's all part of a kind of a seamless whole, I mean there isn't any break in the action, *it happened in a very, very short time span, it happened in a very small area*. (Emphasis added.)

Murphy believed that the evidence demonstrated that Spotted Wolf's assault upon Wallin was the "precipitating factor" in the events but that "it's impossible to separate out any one factor, they all moved in that direction [the murder of Gewanski] and followed from the underlying felony."

¶13 Murphy affirmed that during the course of the trial there were extensive discussions among the District Court, the prosecution, and defense counsel about felony murder, the analysis of continuous conduct, and numerous Montana cases bearing upon the felony murder issues. He recalled that there was a "very vigorous discussion" about jury instructions and that "Ms. Strong put forward her theory of the case in a very professional manner." Murphy also testified that Strong was "extremely competent"

6

during the trial, giving as an example her cross-examination of witness Rideshorse, which raised points that the prosecution had not previously considered.

¶14 Attorney Shannon McDonald, as an Assistant Appellate Defender, prepared the brief for Russell's direct appeal to this Court. She testified that her analysis of the trial evidence convinced her that it did not

> permit an argument that the assaults on one victim were a separate transaction from the homicide of the other victim, or that there was a temporal break between the attacks. My memory of the evidence presented was that *the crimes occurred in a short period of time, in a relatively small place, with the victims close together*. (Emphasis added.)

She testified that the evidence presented at trial did not support an argument that the crimes were separate transactions. She believed that the events, starting with the attack on Wallin and ending with the murder of Gewanski, were "*inextricably tied together*." (Emphasis added.)

¶15 On July 8, 2014, the District Court issued detailed findings of fact regarding Russell's postconviction claims that his attorneys at trial and on appeal provided him with ineffective assistance.[1] The District Court found that Strong understood the felony murder charge and the evidence that the State would present. The District Court found that Strong had adequate time to prepare and that after examining the crime scene she believed that the assault on Wallin and the death of Gewanski did not involve "two crime scenes." She understood the State's theory of the case that the assault on Wallin "started

---

[1] The District Court noted that Russell's petition for postconviction relief raised numerous other allegations that were not addressed at the hearing, but that were also not withdrawn. In the present appeal Russell has likewise focused on the IAC claims and has not addressed the other issues. We have no basis to review any other claims and decline to do so.

7

the incident that included the death of Gewanski." The District Court found that "Strong understood the charge correctly." She "researched application of the felony murder rule"; believed that it made a conviction more likely; and believed that the specific unanimity instruction that she offered would address her concerns.

¶16 The District Court found that the crime scene was small and that "the events were committed close in time and space." The entire scene from where Wallin was assaulted to where Gewanski was killed was "only about 30-40 feet long." The District Court noted the testimony of attorneys Kelleher and Snodgrass, who represented co-defendant Spotted Wolf. They investigated the scene and the facts and were "well aware of the nature of the events." They ultimately concluded that the State had properly charged their client. Spotted Wolf pled guilty to charges of deliberate homicide by accountability, to aggravated assault and to robbery.

¶17 As to appellate counsel McDonald, the District Court found that she raised three issues on appeal, one of which was the successful argument that Russell could not be convicted of both felony murder and the predicate offense of assault. The District Court noted that McDonald believed at the time of direct appeal that the trial evidence did not permit an argument that the Wallin and Gewanski attacks were separate and unrelated events. At the time of the postconviction hearing, McDonald still construed the evidence that way, and did not agree with Russell's arguments on application of the felony murder statute. The District Court noted the testimony of prosecutor Murphy that his construction of the facts was that "the initial assault [against Wallin] with the knife caused everything that happened after that."

8

¶18 The District Court noted the testimony of Assistant Appellate Defender Koan Mercer, who represented Russell on direct appeal after attorney McDonald left her appellate defender position. Mercer testified that in his opinion there was insufficient evidence at trial to support a felony murder conviction based upon his belief that there were separate crimes involving the two victims. Mercer testified that no reasonable attorney could hold a different opinion and that failure to reach such a conclusion fell below the duty of care for attorneys. Because McDonald construed the facts differently, Mercer testified that she provided ineffective assistance to Russell.

¶19 The District Court acknowledged the conflicting testimony on the viability of the felony murder charge under the facts of Russell's case. The District Court found that Strong provided zealous representation throughout the trial, understood the charges, and was knowledgeable and prepared. The District Court concluded that Strong's representation was "anything but ineffective." The District Court similarly found that on appeal McDonald understood the felony murder charge and that after a "thorough review of the record" determined that it did not support a two-crimes argument. The District Court found that McDonald's representation did not breach the standard of care and was not ineffective. The District Court concluded that it was "entirely reasonable" for McDonald to interpret the evidence as showing that the assault and the homicide were "inextricably intertwined." The District Court determined that it was reasonable for McDonald to conclude that the homicide would not have occurred but for the predicate felony of the assault on Wallin.

¶20 The District Court concluded that there was "no defect in the charging" of felony murder and no deficiency in the State's proof of the charge. The District Court concluded that Russell failed to establish that his attorneys at trial and on appeal were ineffective with regard to the felony murder charge. The District Court concluded that Russell killed Gewanski "in furtherance of the initial aggravated assault" upon Wallin. The District Court concluded that when Spotted Wolf paused his attack upon Wallin, handed the knife back to Russell and then exhorted him to show what he's made of:

> *Russell then acted immediately* in furtherance of that initial aggravated assault by further escalating the violence against another victim. There was no break in time or space. These events took place within feet of one another. . . . The homicide occurred because of Spotted Wolf's aggravated assault. (Emphasis added.)

The District Court concluded that this was sufficient to support the charge and conviction for felony murder.

¶21 The District Court denied Russell's petition for postconviction relief. This appeal ensued.

## STANDARD OF REVIEW

¶22 This case arises from a petition for postconviction relief filed pursuant to § 46-21-101, MCA. A district court considering a petition for postconviction relief may hold an evidentiary hearing, § 46-21-201, MCA, and must enter findings of fact and conclusions of law, § 46-21-202, MCA. The petition may not be based upon grounds for relief that were or could reasonably have been raised on direct appeal. *Rukes v. State*, 2013 MT 56, ¶ 8, 369 Mont. 215, 297 P.3d 1195; § 46-21-105(2), MCA. The petition must identify all facts that support the claims for relief, *Kelly v. State*, 2013 MT 21, ¶ 9,

368 Mont. 309, 300 P.3d 120, and the petitioner has the burden to show by a preponderance of the evidence that the facts justify relief. *Griffin v. State*, 2003 MT 267, ¶ 10, 317 Mont. 457, 77 P.3d 545.

¶23 We review the district court's findings of fact to determine whether they are clearly erroneous. *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175. A finding of fact may be clearly erroneous if it is not supported by substantial evidence in the record; if the district court misapprehended the evidence; or when our review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Brimstone*, ¶ 20. A district court's interpretation of a statute is a conclusion of law which we review for correctness. *Montana State Fund v. Simms,* 2012 MT 22, ¶ 15, 364 Mont. 14, 270 P.3d 64.

¶24 This Court evaluates claims of ineffective assistance of counsel under the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. First the defendant must show that his attorney's performance was deficient by demonstrating that it fell below an objective standard of reasonableness. *Whitlow*, ¶ 14. There is a strong presumption that the attorney's performance fell within the wide range of reasonable professional assistance, *Whitlow*, ¶ 15, because there are "countless ways to provide reasonable assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. A petitioner seeking to reverse a district court's order denying postconviction relief based upon an allegation of ineffective assistance of counsel has a heavy burden. *Bomar v. State*, 2012 MT 163, ¶ 5, 365 Mont. 474, 285 P.3d 396.

¶25 Second, the defendant must show that his attorney's deficient performance prejudiced the defense. *Whitlow*, ¶ 10. This requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

## DISCUSSION

¶26 *Issue One: Whether Russell received effective assistance of counsel at trial based upon allegations that counsel failed to research and understand the principles of felony murder; failed to properly move for dismissal of that charge; and failed to offer proper instructions on felony murder.*

¶27 The offense referred to as felony murder is provided by § 45-5-102(1)(b), MCA:

> (1) A person commits the offense of deliberate homicide if:
> (b) the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being . . . .

The underlying or predicate felony is "both an included offense and an element of felony homicide." *Russell I*, ¶ 24. The only causal connection required to constitute felony murder is that "the death actually occurred during the underlying felony or the flight thereafter." *State v. Burkhart*, 2004 MT 372, ¶ 36, 325 Mont. 27, 103 P.3d 1037. When a person commits a felony like aggravated assault, he initiates conduct that creates a dangerous circumstance, and the intent to commit the felony supplies the intent for the consequences that arise from it. *Burkhart*, ¶ 41.

¶28 Russell contends that he received ineffective assistance of counsel at trial because his attorneys failed to adequately research the law on felony murder and then "proceeded

12

under a fundamental misunderstanding of its elements." Russell contends that the fundamental correlation of "time and place" between the underlying felony and the death, as well as a causal connection between the underlying (predicate) felony and the death are all missing from this case. He contends that all of the attorneys involved in the case, both prosecution and defense, fundamentally misconstrued the facts and the law by assuming that "close proximity of time and place was sufficient to prove felony murder." He contends that if only his attorneys had understood this, and had made the proper motions and arguments, he would not have been convicted of felony murder. Russell contends that the District Court fundamentally erred in the present proceeding by concluding that Spotted Wolf's exhortation of Russell to "see what he could do" with the knife constituted the underlying felony.

¶29 The District Court's findings of fact and conclusions of law do not support Russell's contentions. The District Court and all the attorneys involved on both sides of the prosecution against Russell (except for Mr. Mercer) generally agreed about the facts and how they related to felony murder. The amended information in Russell's case clearly establishes the aggravated assault upon Wallin as the predicate or underlying felony in the felony murder charge. There is no support for Russell's assertion that the District Court (or any of the attorneys) failed to understand this. Specifically there is no support for Russell's assertion that the District Court determined that Spotted Wolf's exhortation of Russell after handing back the knife "constituted the underlying felony." That assertion makes little sense.

13

¶30    The fact that Spotted Wolf handed the knife back to Russell and exhorted him to do something is, however, critical in analyzing the *causal* connection of the events that began when Russell and Spotted Wolf entered the alley and that ended with Gewanski's death.  The overwhelming evidence is that the events in this assault and murder spree occurred in a small area in a very short period of time.  Those facts lay the groundwork for determining whether there was a causal connection to the events that then happened.

¶31    As detailed in the District Court's findings of fact, the events of that evening were set in motion when Spotted Wolf began the assault upon Wallin in an attempt to extort alcohol or money from him.  The facts demonstrate that the assault dramatically escalated when Russell handed Spotted Wolf the knife Russell had stolen earlier in the evening.  Spotted Wolf used Russell's knife to slash the hapless Wallin across the face and then he returned the knife to Russell with an admonition or exhortation to do something with it.  Russell took the knife the short distance to where Gewanski slept and stabbed and killed him.  Russell then immediately returned to Wallin, and he and Spotted Wolf continued the initial assault, from which Wallin narrowly escaped with his life.

¶32    These events form a continuing narrative from the assault to the murder.  While Spotted Wolf's exhortation of Russell to do something with the knife was an important factor, there is no support for Russell's assertion that the District Court (or anyone else) considered the exhortation itself to be the underlying felony.  "The felony homicide charge in Count 1 was predicated on the charge for aggravated assault in Count II." *Russell I*, ¶ 18.

14

¶33 As the District Court properly determined, the assault and the murder took place in close proximity as to time and place, and the murder flowed in a continuous series of actions from the assault against Wallin by both Spotted Wolf and Russell. Therefore Russell was properly charged with and convicted of felony murder. There is substantial evidence in the record to support the District Court's findings of fact, and Russell has not met his burden to demonstrate that the facts as found by the District Court were clearly erroneous.

¶34 The District Court found, after hearing the testimony of those directly involved, that lead trial attorney Strong properly understood the charge and the facts. The District Court, having presided over both Russell's trial and the postconviction relief proceeding, was in a unique position to evaluate the performance of trial counsel with regard to the felony murder charge. Russell failed to establish at the postconviction hearing that attorney Strong was deficient as a matter of fact, and failed to establish on appeal that the District Court's findings of fact in that regard were clearly erroneous. Russell has not demonstrated that the legal assistance provided to him fell below an objective standard of reasonableness. *Whitlow*, ¶ 14. Russell has not overcome the strong presumption that the attorney's performance fell within the wide range of reasonable professional assistance, *Whitlow*, ¶ 15.

¶35 Further, Russell failed to demonstrate that the outcome of the trial would have been any different had Strong argued that the events in this case were insufficient to constitute felony murder. There is no showing that such an argument would have been successful in avoiding the charge of felony murder.

15

¶36 We therefore affirm the District Court's decision that Russell did not receive ineffective assistance of counsel at trial.

¶37 *Issue Two: Whether Russell received effective assistance of counsel on appeal based upon allegations that counsel failed to understand the principles of felony murder and failed to attack the sufficiency of the evidence to support a conviction of that charge.*

¶38 All of these same considerations lead to the conclusion that the District Court correctly determined that attorney McDonald did not provide ineffective assistance of counsel on appeal. The District Court found that the evidence showed that McDonald understood the law on felony murder, that she thoroughly reviewed the trial record, and that she determined that the evidence would not support an argument that the facts failed to support the charge of felony murder. Rather, she adopted a strategy, which was ultimately successful, to challenge the convictions for both the homicide and the underlying predicate felony assault. Other than offering attorney Mercer's opinion, the most that Russell established below was that attorneys might disagree about how to apply the facts of this case to the felony murder statute. The District Court properly determined that McDonald's performance did not fall below the objective standard of reasonableness for attorney representation. As noted above, there are "countless ways to provide reasonable assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶39 We therefore affirm the District Court's decision that Russell did not receive ineffective assistance of counsel on appeal.

16

**CONCLUSION**

¶40    We affirm the District Court's decision to deny Russell's petition for postconviction relief.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Patricia Cotter, dissenting.

¶41    The Court concludes that the District Court and the attorneys on both sides of the case generally agreed about how the facts related to and established felony murder. Opinion, ¶ 28.  Respectfully, I disagree.  There was confusion—not agreement—about what constituted the predicate felony for the felony murder charge.  In addition, there was a failure of proof of a causal connection between the two crimes so as to satisfy the requirements of the felony murder rule.

¶42    At ¶ 6, the Court asserts that the State charged the aggravated assault upon Wallin as the underlying felony to support the felony murder charge; notably, the Court does not state whether it was Spotted Horse's aggravated assault of Wallin or Russell's aggravated assault of Wallin that constituted the predicate offense. (Both were charged with aggravated assault.)  Trial counsel Penny Strong testified that the basis of the felony murder charge against Russell was that Russell started the chain of events by giving his

17

knife to Spotted Wolf, who used it in the initial assault upon Wallin. Opinion, ¶ 11. The District Court concluded that the predicate felony was *Spotted Wolf's* assault on Wallin. Opinion, ¶ 20. However, this Court concluded in Russell's direct appeal that the predicate offense was *Russell's* assault upon Wallin. *Russell I*, ¶ 28. The fact that there is still no clarity about whose offense constituted the predicate for the felony murder charge against Russell underscores the flaw in the manner in which this case was charged and tried, and the ineffective assistance of trial counsel in failing to grasp the elements of the felony murder rule and pin down who committed the predicate offense.

¶43 If as the District Court concluded, the predicate felony was Spotted Wolf's assault on Wallin, then under § 45-5-102(1)(b), MCA, it would arguably be he who would be guilty of felony murder, not Russell, because he would be the person who committed a felony and in the course of that felony became accountable for the death of Gewanski. Spotted Wolf's malicious intent for the predicate offense cannot be transferred to Russell. As we stated in *State v. Weinberger*, 206 Mont. 110, 115, 671 P.2d 567, 569 (1983): "In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to *his* felony is malice and not the act of killing." (Emphasis added).

¶44 I also submit trial counsel was ineffective for failing to challenge the charge of felony homicide given the circumstances of the two crimes. Regardless of whose act constituted the predicate offense, the fact is that no causal connection existed between the aggravated assault on Wallin and the death of Gewanski. According to Spotted Wolf's testimony at trial, after he and Russell slashed and stabbed Wallin, he and Russell then

decided "to go around to the other side [of the building] and just leave out to the North Side "; however, when they discovered their passage through that end of the alley was blocked, "we just stopped for, you know, not too long, we just stood there and then, you know, [Russell] went over here . . . [and] he was hitting another person" (Gewanski). *Russell*, ¶ 51 (Nelson, J., dissenting).

¶45    In order for the felony murder rule to apply, "a causal connection between the felonious act and the death must be present." *State ex rel. Murphy v. McKinnon,* 171 Mont. 120, 127, 556 P.2d 906, 910 (1976). As Justice Nelson observed in his dissent in ¶ 53 of *Russell I,* we quoted with approval these statements by the Pennsylvania Supreme Court in *State v. Weinberger*, 206 Mont. 110, 671 P.2d 567 (1983):

> The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. It is necessary . . . to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony . . . and not merely coincidence. (Internal quotations omitted.)

The facts as related by Spotted Wolf simply do not establish that the stabbing of Gewanski was done "in furtherance of the design to commit" a robbery or assault upon Wallin. Gewanski's death was not a consequence of the assault upon Wallin; his death was the result of a spontaneous drunken decision by Russell to kill a person sleeping by a dumpster who had no connection whatsoever to Wallin.

¶46    For these reasons, I would conclude that trial counsel was ineffective. I would further conclude that appellate counsel was ineffective for failing to challenge the State's proof of a causal connection between the two crimes so as to justify the felony murder conviction, as well as the District Court's conclusion that it was Spotted Wolf's actions

19

that constituted the predicate felony for the charge of felony murder against Russell.  I therefore dissent from the Court's Opinion.  I would add that all of these problems could have been forestalled had the State charged and tried this case in a straightforward manner in the first place.

/S/ PATRICIA COTTER

Justice Laurie McKinnon joins in the Dissent of Justice Patricia Cotter.

/S/ LAURIE McKINNON