FILED

08/01/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0337

DA 21-0337

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 146

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

ISAIAH JAMES PEHRINGER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC 2020-44
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

          Wyatt Glade, Custer County Attorney, Miles City, Montana

Submitted on Briefs:  May 10, 2023

Decided:  August 1, 2023

Filed:

_____
                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Isaiah James Pehringer appeals from the judgment entered by the Sixteenth Judicial District Court, adjudging him guilty of five offenses: felony assault on a peace officer or judicial officer, in violation of § 45-5-210(1)(a), MCA (Count II); misdemeanor assault, in violation of § 45-5-201(1)(a), MCA (Count I); and three counts of misdemeanor assault with a bodily fluid, in violation of § 45-5-214(1)(a)(iii), MCA (Counts III, IV, and V). Pehringer, a youth at the time of the offenses, pled guilty to the four misdemeanor charges, and proceeded to jury trial on the felony charge, for which he was found guilty. Pehringer challenges the District Court's jurisdiction over the misdemeanor charges, and the District Court's imposition of statutory charges within his sentences. We address the following issues, affirming in part and reversing in part:

1. *Did the District Court err by exercising jurisdiction over the misdemeanor charges as arising during the commission of a felony charge enumerated in § 41-5-206, MCA?*

2. *Did the District Court err by imposing a $20 statutory charge in the written judgment upon the sentence for Count III, rather than the statutory surcharge of $15, and by imposing a $200 statutory charge upon a suspended $2,000 fine for Count II?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Pehringer pled guilty to misdemeanor Counts I, III, IV, and V, and the related facts are drawn from the charging documents, as well as from the trial conducted on felony Count II. On December 8, 2019, around 3:15 p.m., Pehringer, who was a detainee at the Pine Hills Youth Correctional Facility, entered the facility's gymnasium, walked up to another youth, and began punching him in the head (Count I). Staff members intervened,

2

pulled Pehringer away from the youth, and eventually placed him in restraints. While he was being taken from the gymnasium, Pehringer attempted to spit on and kick other juveniles, leading the staff to place leg restraints on Pehringer, which he resisted, attempting to bite the staff.[1] Staff members then carried Pehringer to his cell, where they removed his restraints. Pehringer had turned 17 years of age about two months prior to this incident.

¶3    In his cell, Pehringer became agitated, tore up his shirt, and threatened to hang himself with it. Staff determined they needed to move Pehringer to a cell that had a camera so they could monitor his behavior. Five staff members suited up in tactical gear and, using a "pin shield," entered Pehringer's cell. Pehringer kicked and punched the staff members. One of them, Officer Charles Davis, a shift supervisor at Pine Hills, testified that, as he and Officer Renn Ewalt tried to restrain Pehringer's legs, Pehringer kicked Officer Davis in the chest and kicked Officer Ewalt in the thumb, injuring it (Count II). During the encounter, Pehringer spat on Officer Richard Egger, another member of the team (Count III).

¶4    On January 3, 2020, Pehringer requested a copy of his disciplinary write up. Officer Rory English delivered a tablet on which Pehringer could review the write-up, but when he went to retrieve the tablet, Pehringer threw a cup of his urine on Officer English, stating "[h]ow does that piss taste you fucking bitch." (Count IV). Then, on January 14, 2020, an

---

[1] Pehringer was not additionally charged with an offense for this behavior.

altercation between Pehringer and another youth led to Pehringer being taken back to his cell. Pehringer confronted Officer Davis and spit his lunch on him (Count V).

¶5 The State filed an Information in District Court charging Pehringer with five counts: felony assault on a peace officer (Count II), misdemeanor assault (Count I), and three counts of misdemeanor assault with bodily fluid (Counts III, IV, and V). After holding a transfer hearing, the District Court ruled it would retain jurisdiction over all of the counts charged in the case. Pehringer did not challenge the District Court's authority to do so. On April 12, 2021, the day before Pehringer's scheduled jury trial, Pehringer entered guilty pleas to the four misdemeanor counts. Pehringer went to trial the next day on the felony assault charge (Count II), and was found guilty.

¶6 Pehringer was sentenced to 6 months custody for the misdemeanor simple assault, 240 days in custody for each assault with bodily fluid to run concurrently, and 10 years with 5 years suspended for the felony assault. The District Court orally imposed financial obligations, including a $15 surcharge on each misdemeanor, a $2,000 fine for the felony which the court suspended, and a $200 surcharge for the felony. In its written order, the District Court imposed the same financial obligations except that it imposed $20 surcharges on the misdemeanors instead of $15. Pehringer appeals, challenging the District Court's jurisdiction over the four misdemeanor charges and the imposition of the surcharges.

## STANDARD OF REVIEW

¶7 Whether a district court possesses subject matter jurisdiction is a question of law, which this Court reviews de novo. *In re K.B.*, 2016 MT 73, ¶ 10, 383 Mont. 85, 368 P.3d

4

722. This Court reviews criminal sentences for legality which is determined by considering "whether the sentence falls within the statutory parameters, whether the district court had statutory authority to impose the sentence, and whether the district court followed the affirmative mandates of the applicable sentencing statutes." *State v. Steger*, 2021 MT 321, ¶ 7, 406 Mont. 536, 501 P.3d 394 (quoting *State v. Ingram*, 2020 MT 327, ¶ 8, 402 Mont. 374, 478 P.3d 799).

## DISCUSSION

¶8    *1. Did the District Court err by exercising jurisdiction over the misdemeanor charges as arising during the commission of a felony charge enumerated in § 41-5-206, MCA?*

¶9    Pehringer challenges the District Court's jurisdiction over the four misdemeanor charges. Jurisdiction is a "court's fundamental authority to hear and adjudicate cases or proceedings." *In re E.G.*, 2014 MT 148, ¶ 11, 375 Mont. 252, 326 P.3d 1092 (quoting *Matter of A.D.B.*, 2013 MT 167, ¶ 54, 370 Mont. 422, 305 P.3d 739. "The district court has original jurisdiction in all criminal cases amounting to felony and all civil matters and cases at law and equity," and "shall have the power of . . . such additional jurisdiction as may be delegated by the law of the United States or the state of Montana." Mont. Const. art. VII, § 4; *In re E.G.*, ¶ 9. "The youth court has original jurisdiction over cases involving persons under age 18." *In re E.G.*, ¶ 9 (citing *State v. Andersen-Conway*, 2007 MT 281, ¶ 15, 339 Mont. 439, 171 P.3d 678.). However, if a youth is 17 years old at the time he allegedly commits an offense enumerated in § 41-5-206(1), MCA, including assault on a peace officer or judicial officer, "[t]he county attorney *shall file* with the district court a

petition for leave to file an information in district court." Section 41-5-206(2), MCA (emphasis added). An offense not enumerated within § 41-5-206(1), MCA, but which "arises during commission of a crime" so enumerated, "may be transferred to district court" with the enumerated offense, upon motion of the county attorney, a hearing, and order of the district court. Section 41-5-206(5), MCA. Here, the District Court retained jurisdiction over the four misdemeanor charges, Counts I, III, IV, and V, and the question raised by Pehringer is whether these crimes "[arose] during the commission" of Count II, the enumerated offense of felony assault on a peace officer, thus authorizing the District Court to exercise jurisdiction over those charges in conjunction with the felony charge. Section 41-5-206(5), MCA.[2]

¶10　When interpreting a statute, this Court's goal is to "ascertain and give effect to the legislative intent." *State v. Quensel*, 2009 MT 388, ¶ 16, 353 Mont. 317, 220 P.3d 634 (quoting *Shelby Distributors, LLC v. Mont. Dept. of Revenue*, 2009 MT 80, ¶ 18, 349 Mont. 489, 206 P.3d 899). To do so, we look at the statute in its entirety, noting that "statutory construction is a 'holistic endeavor' and must account for the statute's text, language,

---

[2] Although noting that Pehringer did not challenge the District Court's exercise of subject matter jurisdiction over the misdemeanor charges, the State correctly does not argue a failure to preserve the issue. Subject matter jurisdiction cannot be waived, and may be raised at any time. *See Alto Jake Holdings, LLC v. Donham,* 2017 MT 297, ¶ 28, 389 Mont. 435, 406 P.3d 937 ("While the failure to timely object generally waives non-jurisdictional procedural defects, 'lack of subject matter jurisdiction cannot be waived, and may be raised at any stage of a judicial proceeding by a party or sua sponte' by the trial or appellate court.") (citation omitted). Likewise, while Pehringer entered guilty pleas to the misdemeanor charges, "the knowing and voluntary entry of a guilty plea waives all *non-jurisdictional* defects and defenses, including claims of constitutional rights violations which occurred prior to the plea." *State v. Torres*, 2017 MT 177, ¶ 11, 388 Mont. 161, 398 P.3d 279 (emphasis added).

structure, and object." *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (quoting *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426) (internal citations omitted). "The duty of this Court is to 'read and construe each statute as a whole' so that we may 'give effect to the purpose of the statute.'" *City of Missoula*, ¶ 18 (quoting *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819) (internal citations omitted).

¶11 The State concedes the District Court erred by retaining jurisdiction over Counts IV and V, agreeing with Pehringer's argument that those crimes, committed respectively on January 3 and on January 14, 2020, did not arise during the commission of the December 8, 2019, assault on a peace officer, and were properly subject only to youth court jurisdiction. We concur with the parties that these two offenses did not arise during the commission of the felony assault and therefore the District Court lacked subject matter jurisdiction over them, requiring reversal of Counts IV and V. The parties disagree regarding Counts I and III.

¶12 We have little trouble concluding Count III arose during the commission of the Count II assault on Officer Ewalt. Count II occurred in the cell when Officers Davis, Ewalt, and Egger attempted to subdue Pehringer to move him to a different cell. Officer Ewalt's thumb was kicked and injured, which was the basis for Count II, Officer Davis was kicked in the chest, and Officer Egger was spat on, the latter of which formed the basis of Count III, assault with bodily fluid. The facts underlying Count III occurred during the

same skirmish as those underlying the Count II felony, and arose during its commission. Over that charge the District Court properly exercised jurisdiction.

¶13    Regarding Count I, the misdemeanor assault charged for Pehringer's hitting the head of another juvenile in the gymnasium, the State argues that "Counts I, II, and III occurred in close proximity as to time and location, and all three were part of a continuous series of acts." In support, the State analogizes to the "in the course of" element of the felony murder statute, and our application of that statute in *Russell v. State*, 2016 MT 69, 383 Mont. 60, 368 P.3d 1171, wherein we concluded that "the assault and the murder took place in close proximity as to time and place, and the murder flowed in a continuous series of actions from the assault. . . ." *Russell*, ¶ 33; § 45-5-102(1)(b), MCA.

¶14    However, beyond the differences in the language employed by these statutes, the facts here distinguish the cases as well. Count I occurred earlier in the gymnasium, and was followed by the staff subduing Pehringer there and returning him to his cell. While in his cell, Pehringer became agitated, ripped up his shirt, and threatened to kill himself, which prompted the staff's decision to move Pehringer to a different cell. Donning protective gear and obtaining a shield, a staff team entered Pehringer's cell, where Pehringer attacked them, resulting in the injuries forming the basis for Counts II and III. While the gymnasium assault occurred on the same day and shortly before the cell events, we cannot conclude these facts establish that the Count I assault satisfies the statutory requisite to "arise during the commission of" Count II. The State argues that, under the transaction rule, the gymnasium assault was inextricably intertwined with the felony

8

assault such that "it would have been difficult for witnesses to testify coherently and provide a comprehensive and complete picture of the events without at least referencing" the earlier assault. While a viable argument about application of an evidentiary rule governing permissible testimony, this does not supplant the separate jurisdictional inquiry under § 41-5-206(1), MCA, which requires Count I to arise during the commission of Count II in order for the District Court to exercise jurisdiction over the charge. Consequently, we conclude the District Court erred by retaining jurisdiction over Count I.

¶15 Pehringer offers an alternative argument that, should we conclude Count III arose during the commission of Count II for purposes of § 41-5-206(1), MCA, the District Court nonetheless lacked jurisdiction over Count III because § 45-5-214, MCA, which criminalizes assault with bodily fluid, provides "[t]he youth court has jurisdiction of any violation of this section by a minor." However, as the State argues, this provision does not establish *exclusive* jurisdiction over all such violations in the youth court. Section 41-5-203(1), MCA, recognizes an exception to youth court jurisdiction for "cases filed in the district court under [§] 41-5-206." Further, the State demonstrates from legislative history that the intent of the 2017 amendment to § 45-5-214, MCA, is consistent with the plain meaning of these provisions, showing the amendment was adopted to coordinate § 45-5-214, MCA, with § 41-5-206, MCA, such that a charge of assault with bodily fluid against a youth may be tried in district court only if it arises during the commission of an enumerated felony. That is precisely what occurred here.

¶16 We conclude the District Court properly exercised jurisdiction over Count III as arising out of the commission of Count II, and affirm those convictions. We reverse the convictions under Counts I, IV, and V for want of jurisdiction in the District Court under § 41-5-206(5), MCA.

¶17 *2. Did the District Court err by imposing a $20 statutory charge in the written judgment upon the sentence for Count III, rather than the statutory surcharge of $15, and by imposing a $200 statutory charge upon a suspended $2,000 fine for Count II?*

¶18 Pehringer challenges the District Court's assignment of statutory charges in his sentences. Because we have reversed Pehringer's convictions under Counts I, IV, and V, we address only the charges assessed in the sentences for Counts II and III. Regarding misdemeanor Count III, the District Court orally imposed a charge in the correct amount of $15, as provided in § 46-18-236(1)(a), MCA, but in its written judgment imposed a charge of $20, citing § 46-18-236(1)(b), MCA, which is applicable only to felony sentences. As the State concedes, the written judgment is incorrect on this detail and the amount must be amended to $15.

¶19 Lastly, Pehringer argues the District Court erred by imposing a charge of $200 for Count II, contending the charge "is illegal because it is based on a suspended fine rather than a levied fine," in reference to the statutory language requiring imposition of "the greater of $20 or 10% of the fine levied for each felony charge." Section 46-18-236(1)(b), MCA. The State argues because Perhringer did not object to the condition, his appeal is

10

limited to the legality of his sentence under *Lenihan*[3] review, that being whether the charge exceeds statutory parameters. Perhringer does challenge the legality of the condition, and thus the parties argue at length over the meaning of the term "levied" in this context.[4]

¶20    Section 46-18-236, MCA, does not further define or explain its use of the term "levied" in its imposition of "the greater of $20 or 10% of the fine levied for each felony charge." *See also* § 46-1-201, MCA; § 46-18-104, MCA (definitions). In the context of sentencing assessments, we have noted the United States Supreme Court has held "that 'execution,' '*levy*,' 'attachment,' 'garnishment,' or 'other legal process' 'are terms of art referencing to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involves some form of judicial authorization.'" *State v. Eaton*, 2004 MT 283, ¶ 25, 323 Mont. 287, 99 P.3d 661 (emphasis added). While the State is conceptually correct in its argument that a fine cannot be suspended unless it is first "imposed or assessed," the Legislature chose to employ an additional term, "levied," one that we have recognized as a term of art, for purposes of calculating the amount of the statutory charge. "Where there are several provisions or particulars, such a [statutory] construction is, if possible, to be adopted as will give effect

---

[3] *State v. Lenihan*, 184 Mont. 338, 342-43, 602 P.2d 997, 999-1000 (1979).

[4] The condition is commonly referred to as a "surcharge," as the parties do here. *See also State v. Steger*, 2021 MT 321, ¶¶ 8-9, 406 Mont. 536, 501 P.3d 394. The condition is referenced in the statute as a "charge" and, as a matter of legislative history, the assessment was enacted by the Legislature in 1985 as part of the "Act Revising the Pay Structure for Prosecuting Attorneys," which provided for that purpose "Funding by Imposing a Charge on Persons Convicted of Criminal Offenses or Who Forfeit Bond or Bail." 1985 Mont. Laws ch. 719.

to all." Section 1-2-101, MCA. Upon that consideration, we conclude that the use of the term "levied" in the statute limits the 10% calculation of the charge to those fines that are not suspended. Thus, in this case, the "greater" amount under § 46-18-236(1)(b), MCA, is the flat $20 amount.

¶21   In conclusion, we affirm Pehringer's convictions of Counts II and III, and reverse his convictions for Counts I, IV, and V. We reverse and remand to the District Court to amend the charge imposed with the sentence for Count II from $200 to $20, and for Count III from $20 to $15.


                                    /S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

12